IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RACHAEL L. COOK, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:15-cv-456 |
| ) | |
| v. ) | |
| ) | |
| SCOTT MCQUATE, ) | By: Hon. Robert S. Ballou |
| THE OHIO COMPANY, ) | United States Magistrate Judge |
| and JOHN RICHARD BLAZER, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rachel L. Cook ("Cook"), a Virginia citizen, filed an amended complaint against Defendants John Richard Blazer ("Blazer"), Scott McQuate ("McQuate") and The Ohio Company, all Ohio citizens, asserting claims for actual fraud, conspiracy, conversion, breach of fiduciary duty and violations of the Racketeer Influenced and Corrupt Organization ("RICO") Act. Dkt. No. 16. Cook contends that the defendants participated in a scheme to defraud her of $25,000 through an investment in Heritage Acquisition Group, Inc. ("Heritage) by using The Ohio Company as the primary investment vehicle. The defendants moved to dismiss the Amended Complaint in its entirety under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction,[1] Dkt. No. 18, and alternatively to dismiss the RICO claim (Count V) pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[2]

---

[1] Defendants also filed a Motion to Dismiss Cook's initial complaint (Dkt. No. 13), which is now moot. See Young v. City of Mount Rainer, 238 F.3d 567, 573 (4th Cir. 2001) ("The general rule…is that an amended pleading supersedes the original pleading, rendering the original pleading of no effect).

[2] Defendant Blazer filed bankruptcy after Cook filed this action. On May 27, 2016, the district court stayed all further proceedings against defendant Blazer, but declined to extend the stay to defendants McQuate and The Ohio Company. Thus, I consider the motion to dismiss as to defendants McQuate and The Ohio Company only. For the remainder of this opinion, the term "Defendants" refers only to defendants McQuate and The Ohio Company.

1

I conclude that Cook has set forth a prima facie case of personal jurisdiction over defendants McQuate and The Ohio Company. I further find that count five of the Amended Complaint fails to properly state a claim for relief under RICO. I **RECOMMEND** that the Court **GRANT in part** Defendants' Motion to Dismiss (Dkt. No. 18), and **DISMISS** Count V of the Amended Complaint without prejudice, and granting Cook leave to amend her complaint.

## BACKGROUND[3]

Cook alleges in her complaint that defendants McQuate and Blazer defrauded her by convincing her to invest $25,000 with the Heritage. Cook first became acquainted with defendant McQuate when she purchased his books and services sold on an internet website. Am. Compl. ¶ 13. In early 2013, McQuate became aware that Cook had secured a patent of some type. McQuate then sent Cook an email congratulating her on her success obtaining the patent. Id. ¶¶ 9, 12. A month later, McQuate called Cook to discuss her interest in investment opportunities, including an investment with Heritage.[4] Id. ¶¶ 14, 15. Thereafter, McQuate both emailed and called Cook numerous times to discuss her interest in investing with Heritage. Id. ¶¶ 15, Cook Decl., Dkt. No. 29-1 ¶ C. Through these discussions, McQuate introduced Cook to defendant Blazer, the President and CEO of The Ohio Company, an investment firm which brokers investment opportunities for businesses and individuals.[5] Id. ¶ 16. McQuate represented to Cook that Blazer could assist with the investment in Heritage.[6] Dkt. No. 18-1. Id.

---

[3] The facts are taken from the Amended Complaint, unless otherwise noted. The court construes all allegations and reasonable inferences in the light most favorable to Cook. See DeSole v. U.S., 947 F.2d 1169, 1171 (4th Cir. 1991). For purposes of the motion to dismiss, I have considered only the allegations in the Amended Complaint.

[4] The parties agree that Heritage is a legitimate investment company involving gold mining overseas.

[5] The Ohio Company is incorporated under the state of Ohio and maintains its principal and only place of business in Ohio.

[6] McQuate denies any formal affiliation with The Ohio Company, and describes Blazer as a friend. McQuate Decl., Dkt. No. 18-1, ¶ 3.

2

In March 2013, McQuate and Blazer twice mailed to Cook's home in Virginia a prospectus for investing in Heritage, and included a letter on The Ohio Company letterhead.[7] Id. ¶¶ 17, 21, 22. McQuate and Blazer also arranged a conference call with Cook on May 15, 2013, to discuss her potential investment in Heritage. Id. ¶ 25. During the call, McQuate and Blazer asked Cook to invest $25,000 with Heritage. Id. ¶ 26. Cook asked whether Heritage would accept such a small investment, and Blazer assured her that the investment would be made through The Ohio Company, which had a special relationship with Heritage. Id. ¶¶ 27, 28. Blazer and McQuate told Cook, however, that she must invest by May 16, 2013 (the next day), or the opportunity would no longer be available. Id. ¶ 30. Cook relied upon these representations and wired $25,000 from a bank in Roanoke, Virginia to a bank identified by Defendants in Ohio that same day. Id. ¶ 35. When Cook attempted to obtain information about her investment in Heritage months later, she was told that Heritage had no record of her investment. Id. ¶¶ 36; Cook Decl., Dkt. No. 29-1, ¶ J.

## ANALYSIS

### A. Personal Jurisdiction

Defendants assert that they lack the required minimum contacts with Virginia to be subject to suit in this district. Specifically, Defendants do not maintain offices or agents in Virginia, do not own property in Virginia, do not engage in significant or long-term business activities in Virginia, and do not advertise or direct solicitations for clients in Virginia. Dkt. No. 18, p. 22. Cook asserts, however, that Defendants intentionally reached into Virginia to perpetuate a fraud on a Virginia citizen, and that the "effects" of the fraudulent act were felt in Virginia, which is sufficient to establish personal jurisdiction in this district. See Calder v. Jones,

---

[7] All parties agree that the mailings included genuine prospectuses for Heritage.

465 U.S. 783, 790 (1984); Consulting Engineers Corp. v. Geometric Limited, 561 F.3d 273, 280 (4th Cir. 2009).

Under Rule 12, a defendant may move to dismiss a complaint for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). "Where, as here, the district court addresses the question of personal jurisdiction on the basis of motion papers, supporting legal memoranda, and the allegations in the complaint," the plaintiff need only make a prima facie showing that personal jurisdiction exists over the moving defendant. Consulting Eng'rs Corp., 561 F.3d at 276. In making this determination, the "court must take all disputed facts and reasonable inferences" in the plaintiff's favor. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs, Inc., 334 F.3d 390, 396 (4th Cir. 2003); see also Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989). I will therefore consider all relevant allegations in the Amended Complaint and the declarations submitted by Cook and Defendants in the light most favorable to Cook.

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997). Cook seeks to assert personal jurisdiction over Defendants under Virginia's long-arm statute, which allows a court to assert personal jurisdiction over defendants for causes of action arising from persons (1) transacting any business in Virginia or (2) causing tortious injury by an act or omission in Virginia. Va. Code § 8.01-328.1 (1) and (2). Here, the Virginia long arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, see English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990); thus, "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135–36 (4th Cir. 1996). The question, then, is whether the defendant has sufficient "minimum contacts with [the forum] such that the

4

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)).

A defendant must have sufficient "minimum contacts" with the forum state or have purposefully availed themselves of the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 463 (1985). The minimum contacts test ensures that a defendant is not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," id. at 475, and affords a defendant protection "from having to defend [itself] in a forum where [it] should not have anticipated being sued." Consulting Eng'rs Corp., 561 F.3d at 277 (citing World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Determining the reach of judicial power over persons outside of a state's borders under the International Shoe standard is undertaken either by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). Specific jurisdiction focuses on the particular conduct giving rise to the suit while general jurisdiction exists where a defendant's overall contacts with the forum state are continuous and systematic. There is no basis for the court to exercise general jurisdiction over Defendants in this case;[8] however, I find that the factual allegations set forth in the Amended Complaint support the exercise of personal jurisdiction under the specific jurisdiction test.

---

[8] General jurisdiction exists over a nonresident defendant who has "continuous and systematic" contacts with the forum state. ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 712 (4th Cir. 2002). Cook asserts that McQuate's operation of a website which is accessible by, and sells products to all 50 states is sufficient to establish general jurisdiction over Defendants. Am. Compl. ¶13. Maintenance of a website accessible to Virginia residents without more is an insufficient basis to support general jurisdiction. See ALS Scan, Inc., 293 F.3d at 711–12; AARP v. Am. Family Prepaid Legal Corp., 604 F. Supp. 2d 785, 798 (M.D.N.C. 2009); Burleson v. Toback, 391 F. Supp. 2d 401, 414 (M.D.N.C. 2005) ("it is well-settled in the Fourth Circuit that accessibility [of a website] alone cannot establish personal jurisdiction"). General jurisdiction sets a higher bar and usually requires that the website be more than a passive internet presence or that a defendant personally maintain ownership of the domain name, neither of which is alleged here. ALS Scan, 293 F.3d at 714–15.

### 1. Specific Jurisdiction

A court analyzing whether a defendant is subject to specific jurisdiction must determine "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." ALS Scan, Inc., 293 F.3d at 712 (quotations and citations omitted).

The first prong focuses on the minimum contacts requirement of constitutional due process that the defendant purposefully avail itself of the privilege of conducting business in the forum state. This prong is not mechanically applied. Instead, the court considers various nonexclusive factors to determine whether a defendant has purposefully availed itself to jurisdiction in the forum state.[9] Specific jurisdiction exists where the defendant has availed itself of the privilege of conducting business in the forum. Consulting Eng'rs Corp., 561 F.3d at 278.

If the court finds that the plaintiff has satisfied this first prong of the test for specific jurisdiction it moves to the second prong – determining whether the plaintiff's claims arise out of the activities or contacts directed to the forum state. See Burger King, 471 U.S. at 472; Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414. If the plaintiff satisfies prongs one and two, prong three comes into play.

The third prong—that the exercise of personal jurisdiction be constitutionally reasonable—permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of

---

[9] In the business context, these factors include, but are not limited to: 1) whether the defendant maintains offices or agents in the forum state; 2) whether the defendant owns property in the forum state; 3) whether the defendant reached into the forum state to solicit or initiate business; 4) whether the defendant deliberately engaged in significant or long-term business activities in the forum state; 5) whether the parties contractually agreed that the law of the forum state would govern disputes; 6) whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; 7) the nature, quality and extent of the parties' communications about the business being transacted; and 8) whether the performance of contractual duties was to occur within the forum. See Consulting Eng'rs Corp., 561 F.3d at 278.

doing business there. Such factors include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies. See Burger King, 471 U.S. at 477 (citing World–Wide Volkswagen, 444 U.S. at 292).

Defendants argue that Cook has not made a prima facie case that they purposefully availed themselves to jurisdiction in this district, contending that they reside in Ohio, did not travel to Virginia, did not meet with Cook in person, and do not regularly conduct business in Virginia. Dkt. No. 18-1, p. 22–23. Defendants argue that Plaintiff's allegations of contact—phone calls, emails, and mailings—are insufficient to establish purposeful availment in Virginia. Id. Defendants' reliance on the traditional business factors used to determine minimum contacts is misplaced, however, because this case involves allegations of intentional tort. Where a defendant commits tortious conduct within a state by intentionally deceiving a citizen of that state, the defendant should reasonably expect to be haled before the courts of that state. Vishay Intertechnology, Inc. v. Delta Intern. Corp., 696 F.2d 1062, 1069 (4th Cir. 1982).

In Calder v. Jones, 465 U.S. 783, 790 (1984), the Court held that where an allegation sounds in tort, a court may exercise jurisdiction over a non-resident defendant who is a "primary participant[ ] in an alleged wrongdoing intentionally directed" at a resident in the forum state. In Calder, the Court exercised personal jurisdiction in California over two Florida residents who wrote and edited an allegedly libelous article about actress Shirley Jones because the defendants knew the article would have a "potentially devastating impact" on Jones and knew that the "brunt" of that injury would be felt by Jones in California, where she lived and worked and where the National Enquirer had its largest circulation. Id. at 789–90. The Court held that

7

because the defendants' intentional and allegedly tortious actions were expressly aimed at California, they must reasonably have anticipated being haled into court there to answer for their conduct. In reaching its conclusion, the Court was careful to distinguish between the defendants' conduct and "mere untargeted negligence" that has an effect in the forum.

The Fourth Circuit adopted a similar "effects" test for specific personal jurisdiction in Consulting Engineers Corp., considering whether: "(1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum, such that the forum can be said to be the focal point of the harm; and (3) the defendant expressly aimed his tortious conduct at the forum, such that the forum can be said to be the focal point of the tortious activity." Id. at 280. The Fourth Circuit made clear that "the effects test does not supplant the minimum contacts analysis, but rather informs it." Id.

Here, Cook alleges that Defendants committed the intentional tort of fraud; that she felt the brunt of the harm in Virginia; and that Defendants expressly aimed their wrongful conduct at Cook in Virginia, such that Virginia can be said to be the focal point of the fraud. Specifically, Cook alleges that Defendants' conspiracy to defraud her involved: 1) McQuate initiating contact through a phone call to Cook's Virginia home phone to congratulate her on her success with a patent; 2) telephone calls from McQuate to Cook soliciting her business in a fraudulent investment opportunity; 3) a conference call between McQuate, Blazer and Cook where McQuate and Blazer claimed to be agents for The Ohio Company to discuss the investment opportunity; 4) two mailings from Blazer and The Ohio Company to Cook's Virginia address with regard to the investment opportunity; 5) emails from McQuate and Blazer to Cook's email address; and, 6) a wire transfer of $25,000 from Cook in Virginia to Blazer in Ohio.

Given these facts, under the effects test, Defendants McQuate and The Ohio Company should reasonably expect to be haled into this district for their actions directed at Cook. See Vishay Intertechnology, Inc. v. Delta Intern. Corp., 696 F.2d at 1068 (minimum contacts existed where defendant California corporation wrote three letters and initiated five phone calls to a North Carolina manufacturer; claims of slander, unfair business practice, tortious interference with contract and abuse of process arose out of those contacts; the defendants initiated the contacts; and the defendants intended to inflict foreseeable injury upon plaintiff); see also Oriental Trading Co., Inc. v. Firetti, 236 F.3d 938 (8th Cir. 2001) (minimum contacts existed where Virginia defendants operated a company and made numerous phone calls and sent faxes to Nebraska in connection with a scheme to charge the plaintiff for customs fees never assessed upon a shipment of goods).

Defendants rely upon Tatoian v. Andrews, 100 F. Supp. 3d 549 (W.D. Va. 2015) (J. Conrad), which found that an allegedly fraudulent wire transfer into Virginia, without more, is insufficient to confer specific jurisdiction over a defendant for claims arising from that transfer. In Tatoian, the defendant did not solicit any money from the plaintiff, or communicate with the plaintiff in any way. Rather, the defendant was part of a larger scheme and his only role was to wire funds into Virginia. The court found that defendant's single wire transfer into Virginia was insufficient to establish specific jurisdiction. Id. at 554–555.

In Hegedus v. Ross, No. 5:11-cv-18, 2011 WL 2960194, at *3–4 (W.D. Va. July 21, 2011) (J. Urbanski), the court found no specific personal jurisdiction over defendants domiciled in Delaware where Virginia plaintiffs traveled to Delaware to purchase a home located in Delaware. The sales agreement was executed in Delaware and governed by Delaware law, and all meetings between defendants and plaintiffs took place in Delaware. The court specifically

9

noted that telephone calls and mailings from the Delaware defendants to plaintiffs in Virginia did not rise to the requisite level for specific jurisdiction. Id. at *4. The court found that the defendants did not purposefully reach into Virginia to perpetuate a scam, but rather were contacted by plaintiffs for the purpose of purchasing a house in Delaware, and the alleged fraud arose out of that real estate transaction. Id. at *4.

Here, Defendants initiated and pursued contact with Cook knowing that she was located in Virginia. The court is "entitled to accord special weight to the fact that [Defendants] initiated contact with [Cook]."[10] CFA Inst. v. Inst. of Chartered Fin. Analysts of India, 551 F.3d 285, 295 n. 17 (4th Cir. 2012) (citing Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451 (4th Cir. 2000). Thus, Defendants' connection to the Commonwealth is neither fortuitous, random, unknown to them, nor the result of another party's unilateral activity. See CoStar Grp., Inc. v. LoopNet, Inc., 106 F. Supp. 2d 780, 784 (D. Md. 2000) ("A defendant has fair warning that he might be subject to a forum's jurisdiction if he purposefully directs his activities at forum residents and 'the litigation results from alleged injuries that 'arise out of or relate to' those activities.'") (internal citations omitted).

Defendants focus on the many ways in which they and their relationship with Plaintiff to are rooted in Ohio. "This argument misses the mark. The focus of the 'minimum contacts' analysis is not *which* contacts with the forum are absent, nor *where* the contacts predominate, but only '*whether* enough minimum contacts [with the forum] exist [such] that the district court's assumption of specific jurisdiction does not offend due process.'" Production Grp. Int'l, Inc. v. Goldman, 337 F. Supp. 2d 788, 798 (E.D. Va. 2004) (internal brackets omitted) (emphasis in original) (quoting English & Smith v. Metzeger, 901 F.2d 36, 39 (4th Cir. 1990)). The fact that

---

[10] Defendants assert that Cook initiated contact with McQuate (Dkt. No. 18, p. 22); however, for purposes of this motion, the court must accept Cook's recitation of the facts as true.

much of Defendants' relevant conduct occurred in Ohio does not mean that Virginia's courts cannot exercise jurisdiction in this case. The gravamen of the inquiry is whether Defendants "purposefully established sufficient contacts with Virginia to make jurisdiction [here] constitutionally reasonable." Goldman, 377 F. Supp. 2d at 798.

Plaintiff's claims arose because of Defendants' fraudulent activities directed at a Virginia citizen, and the brunt of the harm was felt in Virginia. Defendants targeted a Virginia citizen and systematically sent emails, made telephone calls, and sent mailings to Virginia all for the purpose, Cook asserts, of cheating her out of $25,000 by inducing her to send money from Virginia to Ohio. There is little doubt that this "litigation results from alleged injuries that arise out of or relate to" activities that Defendants "purposefully directed…at residents of the forum state." Burger King, 471 U.S. at 472–73. The Fourth Circuit has held that this test is "easily satisfied" when the defendant's deliberate contact with the "forum state is the genesis of the dispute." Tire Eng'g and Distrib., LLC v. Shandong Linglong Rubber Co., Ltd., 682 F.3d 292, 303 (4th Cir. 2012).

The court must also decide whether exercising jurisdiction over Defendants in Virginia "would comport with fair play and substantial justice." Burger King, 471 U.S. at 476. In "appropriate cases," courts may consider factors such as the burden imposed on the Defendants, the forum state's interest in the action, and the judicial system's interest in efficiently resolving controversies. Burger King, at 477 (internal brackets omitted). However, a defendant who has purposefully established sufficient contact with a state to make jurisdiction there reasonable "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. (noting that "[m]ost such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional," such as transferring

11
Case 7:15-cv-00456-MFU-RSB   Document 52   Filed 08/18/16   Page 11 of 19   Pageid#: 317

the case to another venue). Defendants do not present a compelling reason why jurisdiction in Virginia is unreasonable. Certainly, Virginia has a substantial interest in overseeing the resolution of allegedly fraudulent actions targeted at its citizens. Further, the burden on Defendants to travel to Virginia is not "'so gravely difficult and inconvenient' as to place [Defendants] at a 'severe disadvantage in comparison to [their] opponent.'" CFA Inst., 551 F.3d at 296 (quoting Burger King, 471 U.S. at 476). Thus, I find that Cook has made the prima facie showing required at this early stage in the litigation that Defendants are subject to personal jurisdiction in this Court.

### B. RICO

Defendants also move to dismiss Count V of the Amended Complaint, which alleges a RICO violation under 18 U.S.C. § 1962(c), for failure to state a claim. RICO makes it unlawful for any person "employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity…" 18 U.S.C. § 1962(c). Thus, to state a claim under § 1962(c), Cook must demonstrate that Defendants engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. Davis v. Hudgins, 896 F. Supp. 561, 567 (E.D. Va. 1995). I agree with Defendants that Cook's allegations are insufficient to state a RICO claim because they do not establish the "conduct" element of § 1962(c) and fail to establish a "pattern of racketeering activity."

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the plaintiff's complaint. See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). A court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. Pshp., 213 F.3d 175, 180 (4th Cir. 2000).

A claimant's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Plaintiffs must offer enough facts to "nudge[] their claims across the line from conceivable to plausible," Twombly, 550 U.S. at 570, and from which the court, calling upon "its judicial experience and common sense," can conclude that the pleader has "shown" that he is entitled to relief. Iqbal, 556 U.S. at 679.

### 1. Conduct- Role in Operation or Management of the Enterprise

Defendants assert that the Amended Complaint fails to sufficiently plead that they were engaged in the "conduct" of an enterprise, as required by RICO. In Reves v. Ernst & Young, 507 U.S. 170 (1993), the Court discussed the "conduct" element of section 1962(c) and determined that RICO requires a participant to have some role in the operation or management of the enterprise. The Court stated that "RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is require*d."* Id. at 179 (emphasis in original); see also United States v. Grubb, 11 F.3d 426, 439 n. 24 (4th Cir. 1993). The court adopted the "operation and management" test to determine whether someone conducts or participates in a RICO enterprise. Id.

Here, Cook asserts that Heritage is the RICO enterprise,[11] but she makes no allegation that

---

[11] A RICO "enterprise" is an ongoing formal or informal organization whose associates function as a continuing unit. Palmetto State Medical Ctr., Inc. v. Operation Lifeline, 117 F.3d 142, 148 (4th Cir. 1997). In a RICO action brought under § 1962(c), the "enterprise" must be distinct from the "person" alleged to have violated the statute, and cannot be both the enterprise and a defendant. Id. This distinction requirement stems from the

13

any defendant had any role, large or small, in the operation or management of Heritage. Cook does not contend that any defendant acted as an employee of Heritage, or served as an outsider participating in or controlling Heritage's affairs. Rather, Cook asserts that Defendants "used Heritage as their RICO enterprise by utilizing its prospectus materials to make it appear they were acting on behalf of Heritage in offering a legitimate investment opportunity." Am. Compl. ¶ 71(B). The use of Heritage's investment materials, without permission, however, does not rise to level of operation or management of Heritage as required by the statute.

Outsiders to an enterprise may also satisfy the "operation or management" test if they are associated with the enterprise and participate in the conduct of its affairs. However, "§1962(c) cannot be interpreted to reach complete 'outsiders' because liability depends on showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs." Reves, 507 U.S. at 185 (emphasis in original); Goren v. New Vision Intern., Inc., 156 F.3d 721, 727–28 (7th Cir. 1998) (holding that there was no "operation or management" despite the fact that defendants automatically designated themselves "business partner" to entities that marketed the enterprise's products and took orders on behalf of the enterprise; instead "these defendants are best characterized as contractors hired by the enterprise to perform specific tasks.").

Cook's Amended Complaint repeatedly alleges that Defendants had no legitimate role with Heritage, but used Heritage's prospectuses without its knowledge to induce her to participate in a fraudulent investment. Cook's Amended Complaint simply does not allege that Defendants were engaged in the conduct of an enterprise as required under RICO.

---

purpose of § 1962(c), which is designed solely to reach criminal activity by employees while protecting the innocent corporate enterprise from criminal infiltration. Toucheque v. Price Bros. Co, 5 F. Supp. 2d 341, 346–47 (D. Md. 1998). See also Vuyyuru v. Jadhav, No. 3:10-BCV-173, 2011 WL 1483725, at *17 (E.D. Va. April 19, 2011).

## 2. Pattern of Racketeering Activity

Cook's allegations also fail to establish the "pattern of racketeering activity" required to state a RICO claim. "Racketeering activity" is defined as any of a number of predicate acts, including mail and wire fraud. See 18 U.S.C. § 1961(1)(B). A pattern of racketeering requires at least two predicate acts; however, simply proving two or more predicate acts is insufficient for a RICO plaintiff to succeed. Al-Abood v. El-Shamari, 217 F.3d 225, 238 (4th Cir. 2002). Instead, to establish a pattern of racketeering activity, "a plaintiff…must show that the racketeering predicates are related and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 239 (1994). Assuming Cook's allegations of mail fraud are sufficient predicate acts for a RICO claim, these predicate acts, together with all of the allegations asserted against Defendants in the Amended Complaint, do not satisfy the continuity test necessary to establish a "pattern of racketeering" under RICO.

The pattern requirement is essentially a "continuity plus relationship" test. ePlus Technology, Inc. v. Aboud, 313 F.3d 166, 182 (4th Cir. 2002). There is no mechanical formula to assess whether a pattern of racketeering activity exists; it is a commonsensical, fact-specific inquiry. H.J., Inc., 492 U.S. at 237–38. However, the Fourth Circuit is "especially cautious" when it comes to finding the existence of a pattern when the predicate acts involved in a RICO claim are mail and wire fraud. Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians, 155 F.3d 500, 506 (4th Cir. 1998). See Int'l Data Bank, Ltd. v. Zepkin, 812 F.2d 149, 154–55 (4th Cir. 1987) ("It will be the unusual fraud that does not enlist the mails and wires in its service at least twice.")

Here, Defendants do not contest that the predicate acts of mail fraud are related, or have "'the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" H.J.

15

Inc., 492 U.S. at 240 (quoting 18 U.S.C. § 3575(e)).  Rather, Defendants argue that the allegations lack the required continuity.  "Continuity in criminal activity can be either open-or closed-ended." Hessek v. N. Am. Mortgage Ins. Servs., No. 2:02cv985, 2003 WL 23961817, at *5 (E.D. Va. Oct. 17, 2003). Open-ended continuity can be demonstrated when past conduct, "by its nature projects into the future with a threat of repetition." H.J., 492 U.S. at 241; Hessek, 2003 WL 23961817, at *5.  Closed-ended continuity is demonstrated by a series of related predicate acts that occur over a "substantial" time period. Hessek, 2003 WL 23961817, at *5.  There is no specific time period that must be established for closed-ended continuity; however, "[t]ime periods of less than two years have failed to provide the requisite period of time." Id. (citing Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989); GE Inv. Private Placement Partners II v. Parker, 247 F.3d 543, 550 (W.D. Va. 2010)).  "Given that Congress wrote the statute with long-term criminal conduct in mind, predicate acts that only extend over a period of a few weeks or months and do not threaten future criminal conduct will not suffice." H.J., 492 U.S. at 242. See also Gov't of Dominican Republic v. AES Corp., 466 F. Supp. 2d 680, 690 (E.D. Va. 2006)  "Significantly, '[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.'  Thus, it is clear that predicate acts of racketeering activity must be part of a prolonged criminal endeavor." ePlus Tech., Inc., 313 F. 3d at 182 (quoting H.J. Inc., 492 U.S. at 242.)

Cook's allegations of two instances of mail fraud, without more, are insufficient to establish continuity. She does not allege that Defendants engaged in a scheme which injured others or which extended beyond Cook. See Menasco, Inc, 886 F.2d at 685 (no closed-ended continuity where there was only one set of victims, one perpetrator, and a one year time frame; in

such a situation, if a RICO claim were recognized, "the pattern requirement would be rendered meaningless."); Gov't of Dominican Republic, 466 F. Supp. 2d at 691–92 (close-ended continuity was not established where there was one victim, one perpetrator, and a time frame of at most one year.); Williams v. Equity Holding Corp., 245 F.R.D. 240, 244 (E.D. Va. 2007) (plaintiff did not allege a pattern of racketeering conduct where plaintiff did not identify any specific fraudulent conduct perpetuated by defendant apart from that directed at plaintiff.)

There is also no basis in the complaint to conclude that Defendants' alleged illegal acts will occur again. Given Cook's allegations of a scheme to defraud her of a one-time investment of $25,000, there is no distinct threat of long-term racketeering activity inherent in the predicate acts and there is no open-ended continuity under RICO. See Scott v. WFS Fin., Inc., No. 206CV349, 2007 WL 190237, at *6 (E.D. Va. Jan. 18, 2007) (RICO's pattern requirement not met where plaintiff points to no specific fraudulent conduct perpetrated by defendants apart from that directed towards plaintiff, and makes blanket assertions that defendants are engaged in a widespread scheme to defraud other customers); SecureInfo Corp. v. Telos Corp., 387 F. Supp. 2d 593, 615 (E.D. Va. 2005) (RICO's pattern requirement not met where defendants sought to fraudulently induce one victim during a period spanning from January 2005 until April 2005, for a narrow and specific purpose, to turn over proprietary information and to use it to compete with victim); but see CVLR Performance Horses, Inc. v. Wynne, 524 F. Appx. 924, 928 (4th Cir. 2013) (RICO pattern requirement met where defendant lured victims into a scheme over a period of three years in a series of racketeering acts and not all of the fraudulent activities had ended); Thomas v. Ross & Hardies, 9 F. Supp. 2d 547, 553-54 (D. Md. 1998) (RICO pattern requirement met where the scheme alleged by the complaint was not self-terminating and did not have a finite

goal, and the facts alleged by the complaint strongly suggest that defendants would have continued to defraud homeowners for as long as they could.).

Here, Cook's allegations of fraud simply do not state a pattern of racketeering activity as required by RICO. Cook's claim does not allege a "series of related predicates extending over a substantial period of time," H.J. Inc., 492 at 242, and instead falls within "the heartland of fraud cases." Al-Abood, 217 F.3d at 238. While Cook's Amended Complaint alleges a significant loss, "Congress intended that RICO serve as a weapon against ongoing unlawful activities whose scope and persistence pose a special threat to social well-being." Int'l Data Bank, Ltd. v. Zepkin, 812 F.2d 149, 155 (4th Cir. 1987). "[A]n ordinary fraud [is] claim better prosecuted under state law." Anderson, 155 F.3d at 506.

## RECOMMENDED DISPOSITION

Accordingly, it is **RECOMMENDED** that an order be entered, **DENYING** Defendants' Motion to Dismiss under Rule 12(b)(2); **GRANTING** Defendants' Motion to Dismiss Count Five of the Amended Complaint pursuant to Rule 12(b)(6) without prejudice, and providing Plaintiff leave to amend her complaint within fourteen (14) days after entry of the Court's order.[12]

The clerk is directed to transmit the record in this case to the Honorable Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein

---

[12] The court will retain subject matter jurisdiction over this case without Plaintiff's RICO claim because the parties have diversity of citizenship and the amount in controversy exceeds $75,000.00. See Naegele v. Albers, 355 F. Supp.2d 129, 133–34 (D.D.C. 2005)( A plaintiff's punitive damages claim is properly considered as part of the amount in controversy if the plaintiff proffers factual evidence that she is entitled to punitive damages and it is not clear beyond a legal certainty that the plaintiff would be unable to recover such damages.)

18

by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as well as to the conclusion reached by me, may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

                                              Entered: August 18, 2016

                                              *Robert S. Ballou*

                                              Robert S. Ballou
                                              United States Magistrate Judge