CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 30 2016

JULIA C. DUDLEY, CLERK
BY: /s/
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| RACHEL L. COOK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 7:15-cv-00456 |
| v. | ) |
| | ) |
| SCOTT MCQUATE, et. al, | ) By: Michael F. Urbanski |
| | )     United States District Judge |
| Defendants. | ) |

## MEMORANDUM OPINION

Before the court are the objections of Scott McQuate, John Blazer, and The Ohio Company ("Defendants") to the Report and Recommendation ("R&R") issued by United States Magistrate Judge Robert S. Ballou. ECF No. 53. The R&R addresses Defendants' motion to dismiss, filed pursuant to Fed. R. Civ. 12(b)(2) and Fed. R. Civ. P. 12(b)(6), arguing the court lacks personal jurisdiction over Defendants and that Count V of the amended complaint alleging RICO violations fails to state a claim. In the underlying amended complaint, Plaintiff Rachel Cook ("Cook") alleges Defendants engaged in (I) actual fraud, (II) conspiracy, (III) conversion, (IV) breach of fiduciary duty, and (V) Racketeer Influenced and Corrupt Organization ("RICO"). ECF No. 18. The R&R recommends finding that this court maintains personal jurisdiction over Defendants, but recommends dismissing Count V without prejudice. ECF No. 52.

Defendants' objections argue the R&R (1) erred in *sua sponte* considering personal jurisdiction case law not asserted by Cook, (2) improperly applied the effects test articulated in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482 (1984), and (3) erroneously recommends

that Count V be dismissed without prejudice. ECF No. 53. Cook has filed a response to these objections. ECF No. 54. The Defendants' arguments are addressed in turn below.

For the reasons that follow, the court agrees with the R&R that personal jurisdiction over Defendants is proper and the dismissal of Count V without prejudice is warranted. Therefore, Defendants' objections, ECF No. 53, are **OVERRULED**, and the R&R, ECF No. 52, **ADOPTED** in its entirety. Accordingly, the court will **DENY in part** and **GRANT in part** Defendants' motion to dismiss, ECF No. 18, **DISMISSING** Count V for RICO violations without prejudice and allowing Cook fourteen (14) days to amend Count V.

I.

Rule 72(b) of the Federal Rules of Civil Procedure permits a party to "serve and file specific, written objections" to a magistrate judge's proposed findings and recommendations within fourteen days of being served with a copy of the report. See also 28 U.S.C. § 636(b)(1). The Fourth Circuit has held that an objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir.), cert denied, 127 S. Ct. 3032 (2007).

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

Id. The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); accord 28 U.S.C. § 636(b)(1). "General objections that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." Moon v. BWX Technologies, Inc., 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012) (citing Veney v. Astrue, 539 F. Supp. 2d 841, 845 (W.D. Va. 2008)); see also Thomas v. Arn, 474 U.S. 140, 154 (1985) ("[T]he statute does not require the judge to review an issue de novo if no objections are filed").

## II.

Defendants' first argument in support of the objections posits that in ruling on a motion to dismiss for lack of personal jurisdiction, courts are limited only to application of case law put forth by the parties, even where the parties fail to cite binding precedent from the United States Supreme Court and such citation aids the court in reaching the proper outcome. ECF No. 53, at 5-6. Fans of justice everywhere can take comfort as courts are not so constrained, and district courts may consult binding case law, even when litigants fail to do so.

The Fourth Circuit Court of Appeals has indeed cautioned district courts in regards to *sua sponte* raising affirmative defenses for which defendants maintain the burden. See, e.g., Clodfelter v. Republic of Sudan, 720 F.3d 199, 207-210 (4th Cir. 2013). However, such

3

concerns do no confront the court, where, as here, Defendants assert the affirmative defense of lack of personal jurisdiction. See ECF No. 18, at 18-31. The parties briefed personal jurisdiction and apparently discussed it at oral argument. ECF No. 53, at 5, fn 3. In explaining the personal jurisdiction analysis employed in the R&R, the magistrate judge relied on Calder, a case not cited by the parties. Such actions were entirely appropriate—particularly considering that Calder is binding precedent from the United States Supreme Court—and the magistrate judge is not precluded from applying applicable law simply because the parties did not.

The cases cited by the Defendants are inapplicable and do not address the issue of a district court's authority to cite case law beyond that presented by the parties.[1] The court wholeheartedly agrees with Judge Moon's observation in Wootten, 2016 WL 922795 at *4, that district courts are under no obligation to fashion arguments on behalf of litigants. However, such an observation simply has no impact on district court's authority to consult relevant case law to address issues properly before the court. The magistrate judge did not err in consulting Calder to assist in determining whether Virginia maintains personal jurisdiction over the Defendants.

### III.

---

[1] Specifically, Defendants cite the following cases that have little to do with the issues before the court: Sanchez-Llamas v. Oregon, 548 U.S. 331, 360, (2006)(holding that Article 36 of the Vienna Convention is subject to procedural default rules that apply generally to federal claims); McNeil v. Wisconsin, 501 U.S. 171 (1991) (holding that a criminal defendant's invocation of his Sixth Amendment right to counsel during a judicial proceeding is not an invocation of a right to counsel pursuant to Miranda); Wootten v. Virginia, Case No. 6:14-cv-00013, 2016 WL 922795 at *4 (W.D. Va. March 10, 2016)(J. Moon)(concluding that a motion for reconsideration of a summary judgment ruling was improper and explaining that the court was not obligated to make arguments on behalf of represented parties.)

Having determined that the magistrate judge acted properly in consulting case law not contained in the parties' briefs, the court now turns to Defendants' arguments that Virginia lacks specific personal jurisdiction over Defendants due to insufficient contacts with the forum that relate to this case.

When a court considers "a question of personal jurisdiction based on the contents of a complaint and supporting affidavits, the plaintiff has the burden of making a prima facie showing in support of its assertion of jurisdiction." Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 558 (4th Cir. 2014) (citing Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 276 (4th Cir. 2009)). In determining if a plaintiff has met this burden, a court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Id. (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)).

Before exercising personal jurisdiction over a non-resident defendant, a court must find that two conditions are satisfied. First, the state's long-arm statute must authorize exercise of jurisdiction in the circumstances presented. Second, the exercise of jurisdiction must comport with Fourteenth Amendment due process standards. Ellicott Mach. Corp., Inc. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993). The Fourth Circuit has interpreted Virginia's long-arm statute, Virginia Code § 8.01–328.1, as coextensive with the Due Process Clause. English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990)(citing Peanut Corp. of Am. v. Hollywood Brands, Inc., 696 F.2d 311, 313 (4th Cir. 1982)). Because Virginia's long-arm statute extends personal jurisdiction to the outer bounds of due

5

process, the two-prong test collapses into a single inquiry when assessing personal jurisdiction in Virginia.

> Fairness is the touchstone of the jurisdictional inquiry, and the 'minimum contacts' test is premised on the concept that a corporation that enjoys the privilege of conducting business within a state bears the reciprocal obligation of answering to legal proceedings there. In the context of specific jurisdiction, the relevant conduct must have only such a connection with the forum state that it is fair for the defendant to defend itself in that state. We do more than formulaically count contacts, instead taking into account the qualitative nature of each of the defendant's connections to the forum state. In that vein, a single act by a defendant can be sufficient to satisfy the necessary quality and nature of such minimal contacts, although casual or isolated contacts are insufficient to trigger an obligation to litigate in the forum.

Tire Eng'g v. Shandong Linglong Rubber Co., 682 F.3d 292, 301 (4th Cir. 2012)(internal quotations and citations omitted).

The question, then, is whether defendant has sufficient "minimum contacts with [Virginia] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). The "minimum contacts" test requires that defendants purposefully avail themselves of the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). This test aims to ensure defendants are not "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," id., and affords defendants protection "from having to defend [themselves] in a forum where [they] should not have anticipated being sued." Consulting Eng'rs, 561 F.3d at 277 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559 (1980)).

6

Determining the reach of judicial power over persons outside of a state's borders under the International Shoe standard is undertaken through consideration of two categories of personal jurisdiction—general and specific. Daimler AG v. Bauman, 134 S. Ct. 746, 754 (2014). General jurisdiction requires a substantial connection to the forum; the defendant's contacts must be so continuous and systematic as to render him essentially "at home." Id. at 754, 760 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846, 2851–54 (2011)). Specific jurisdiction exists in a suit arising out of or related to the defendant's contacts with the forum. Id. at 754.

Because Defendants limit their objection to the R&R's finding regarding specific jurisdiction, the court will not re-analyze the R&R's application of general jurisdiction, though it agrees that general jurisdiction is lacking over the Defendants. In assessing specific jurisdiction, courts employ a three-part test to determine whether the exercise of specific jurisdiction over a nonresident defendant comports with the requirements of due process. Courts evaluate "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the forum state; (2) whether the plaintiff's claims arise out of those activities; and (3) whether the exercise of personal jurisdiction is constitutionally reasonable." Universal Leather, 773 F.3d at 559 (quoting Tire Eng'g, 682 F.3d at 301-02).

Defendants objections involve the first part of the specific jurisdiction query—purposeful availment—which embodies International Shoe's minimum contacts requirement. The purposeful availment inquiry is grounded on the traditional due process concept of minimum contacts, which embodies the premise that those who enjoy "the privilege of conducting business within a state bears the reciprocal obligation of answering to

7

legal proceedings there." Tire Eng'g, 682 F.3d at 301 (internal quotations and citations omitted); see Int'l Shoe Co., 326 U.S. at 320 (examining whether the defendant has "establish[ed] sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice to permit the state to enforce the obligations which [the defendant] has incurred there"). Thus, in determining whether a foreign defendant has purposefully availed itself of the privilege of conducting business in a forum state, courts look to whether "the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir. 1989) (quoting World–Wide Volkswagen, 444 U.S. at 297) (internal quotations omitted).

In applying the above framework to the tort claims in the amended complaint, the magistrate judge properly employed the effects test articulated in Calder and Consulting Eng'rs, 561 F.3d 273. In Calder, two employees of the National Enquirer were sued in California state court in a libel lawsuit related to a story about Shirley Jones, the plaintiff, who lived and worked in California. 465 U.S. at 784-87. The story focused on Jones' activities in California. Id. at 788-89. Two National Enquirer employees, Ian Calder and John South, argued to the Supreme Court that California could not exercise jurisdiction over them as they were Florida residents and conducted work related to the article at issue in Florida. Id. In assessing the contacts of the employees challenging jurisdiction, the Supreme Court emphasized that the contacts of the employees themselves, rather than the contacts of the employer, National Enquirer, were dispositive. Id. at 790. The court also explained that mere forseeability that the article would be circulated in California was insufficient for

8

personal jurisdiction. Id. at 789. Rather, the Supreme Court concluded Calder and South were "primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis." Id. at 790.

Walden v. Fiore, 134 S.Ct. 1115 (2014), reiterates the holding in Calder, explaining personal jurisdiction over a defendant is only proper if the defendant targets the forum state, and the targeted actions give rise to the harmful effects felt by the plaintiff. In Walden, petitioner, a DEA agent, seized $97,000 in cash from respondents, alleged gamblers, at the Hartfield-Jackson Airport in Atlanta. Id. at 1119. Petitioner had information that respondents accumulated the $97,000 at a casino in San Juan, Puerto Rico and knew they were flying to and had a residence in Nevada. Id. Respondents' Nevada counsel contacted the DEA agent on multiple occasions, and eventually filed suit in Nevada federal court. Id.

The Supreme Court explained that petitioner's mere knowledge of respondent's connections to Nevada did not give rise to minimum contacts with Nevada. Id. at 1124-25. The DEA agent did not direct any behavior toward Nevada. Id. Rather, the DEA agent's relevant behavior was directed at the respondents in Georgia. Id. Mere knowledge that the respondents resided in Nevada was of no consequence because no actions were directed toward Nevada. Id.

The Fourth Circuit Court of Appeals has explained that to show personal jurisdiction under the Calder effects tests, (1) the defendant must have committed an intentional tort, (2) from which the plaintiff suffered the brunt of the harm in the forum, such that the forum is the focal point of the harm, and (3) the defendant must have targeted his action. Consulting Eng'rs, 561 F.3d at 280. Consulting Eng'rs went on to explain that "although the place the

9

plaintiff feels the alleged injury is plainly relevant to the jurisdictional inquiry, it must ultimately be accompanied by the defendant's own contacts with the state if jurisdiction over the defendant is to be upheld." Id. at 280-81(quoting ESAB Group v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir. 1997).)

Calder, Walden, and Consulting Eng'rs collectively teach that in undergoing a minimum contacts inquiry—particularly when undergoing an effects test analysis—the court must focus on whether the defendant(s) undertook actions intended to inflict harm in the forum. Thus, mere knowledge that the plaintiff will suffer harm within the forum is insufficient. Rather the defendant must undertake actions directed to the forum that have the effect of causing harm to the plaintiff there. Defendants correctly note "[t]he effects test does not supplant the minimum contacts analysis, but rather informs it." Consulting Eng'rs, 561 F.3d at 280.

The R&R properly focused on the "relationship among the [Defendants], the forum and the litigation." Calder, 465 U.S. at 788 (citing Shaffer v. Heitner, 433 U.S. 186, 204, (1977)). The quality and nature of the contacts in this case meet the minimum contacts requirement. Cook alleges that Defendants engaged in a conspiracy to commit the intentional torts of fraud and conversion and that she felt the brunt of the harm in Virginia. Thus under the effect test articulated in Consulting Eng'rs, the first two prongs are plainly met. Under the third prong of the Consulting Eng'rs test and the minimum contacts test generally, the dispositive issue is whether Defendants took sufficient action directed at Virginia that led to the harm suffered by Cook. Here, the allegations include ample conduct to show that Defendants targeted Virginia. For one, McQuate initiated contact with Cook,

10

by e-mailing Cook in Virginia in reference to Cook's acquiring a patent. ECF No. 16, ¶2. When viewed in a light most favorable to Cook, this initiation of contact is critical. McQuate intentionally e-mailed a Virginia resident, seeking to initiate contact with her for the purpose of engaging in tortious activity. McQuate and Blazer continued to contact Cook through phone calls directed at Virginia. Id. McQuate and Blazer even held conference calls during which McQuate and Blazer, purporting to work as agents on behalf of the Ohio Company, solicited money from Cook. Id. During all of these calls, McQuate and Blazer, representing that they were calling on behalf of the Ohio Company were targeting their tortious activities at a Virginia resident. McQuate and Blazer sent mail and e-mails to Cook regarding investment opportunities. Id. Finally, McQuate and Blazer arranged for Cook to wire $25,000 from Virginia to Ohio. Id. at ¶ 26.

Defendants argue that the significance of these contacts is minimal as Cook described the initial e-mail as "innocuous" and that the conference call was simply a mechanism through which the parties made contact. ECF No. 53, at 3. Defendants mischaracterize plaintiff's amended complaint and fail to recognize that making contact with someone is significant when it is allegedly the mechanism through which you defraud them. Cook's description of the call in Paragraph 12 of the amended complaint does not simply say the congratulatory e-mail was "innocuous." ECF No. 16, ¶ 12. Paragraph 12 makes the common sense observation that a congratulatory remark, in and of itself, is innocuous, but goes on to explain that the e-mail was not so innocuous as it amounted to the "initiation of the [tortious] scheme and was sent with the purpose of ingratiating McQuate and of obtaining the confidence of Cook." Id. Further, the fact that Cook and McQuate engaged

11

in "most of the conversation" during the course of the conference, while McQuate merely arranged the conference call provides no support to Defendants' argument that personal jurisdiction is improper over any of the Defendants. ECF No. 16, ¶ 25. Rather, such facts—taken as true for purposes of this motion—tend to support Cook's argument that McQuate and Blazer acted in concert to tortiously solicit funds from Cook.

This case does not involve "random, fortuitous, or attenuated" contacts with Virginia, nor is this a case where Defendants merely knew Cook lived in Virginia. Compare Walden, 134 S.Ct. at 1123, and Central Virginia Aviation Inc. v. North American Flight Services, Inc., 23 F. Supp. 3d 625, 631 (E.D.Va. 2014)("there is not a single fact alleged, showing Defendant had any contact with the forum state—beyond the alleged harm to Plaintiff who is in Virginia.") Cook did not travel through Ohio, interact with McQuate and Blazer there, and then suffer harm while residing in Virginia. McQuate and Blazer instead reached out to a Virginia resident and engaged in significant correspondence through which they convinced Cook to wire money to Ohio. The amended complaint indicates these contacts with Virginia are the primary mechanism through which McQuate and Blazer fraudulently convinced a Virginia resident to wire money to Ohio. The allegations indicate Defendants engaged in actions—phone calls, letters, e-mails, arranging of wire transfers—designed to reach Virginia for the purpose of tortiously harming a Virginia resident.

The magistrate judge properly concluded that Defendants have sufficient contacts with Virginia such that the first prong of the specific jurisdiction analysis is met. Defendants do not contest the R&R's findings in regards to whether Cook's claims arose from Defendants' contacts with Virginia or whether exercise of personal jurisdiction is

12

constitutionally reasonable. However, the court agrees with the magistrate judge that Cook's claim arises from Defendants' contact with Virginia related to this lawsuit and that personal jurisdiction over Defendants in Virginia is constitutionally reasonable. Ohio residents who initiate contact with a Virginia resident and engage in extensive communication with the same Virginia resident for the purpose of engaging in tortious activities should anticipate being sued in Virginia. Accordingly, the court will **DENY** Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2).

## IV.

Finally, Defendants agree with the R&R's conclusion that Count V for RICO violations should be dismissed, but take issue with the R&R's conclusion that the dismissal should be without prejudice and that Cook shall have of a fourteen (14) day period during which Cook may amend Count V of her amended complaint. Defendants point out that Cook has already filed an amended complaint and argues that "there is no reason to believe that a further chance to amend the RICO claim would be anything but futile." ECF No. 53, at 11. This court has no way of determining whether Cook can amend her complaint with the requirements of Fed. R. Civ. P. 11 in mind. The court agrees with Defendants and the R&R that that Count V of the Amended Complaint fails to state a claim. However, if re-pleading could cure such deficiencies, Cook ought to be allowed leave to amend her pleading such that she can pursue a RICO cause of action. Finally, it will help all parties to this litigation if Cook were to make potential amendments sooner rather than later. Accordingly, the court adopts the R&Rs recommendation that Cook make any amendment to Count V within fourteen days of the entry of this opinion. Accordingly, Count V will be dismissed

13

without prejudice and any amendment to Count V must be made within fourteen (14) days of the entry of this opinion. If Cook chooses to amend, she must do so within fourteen (14) days of the entry of this opinion.

V.

For the reasons set forth above, Defendants' objections, ECF No. 53, are **OVERRULED**, and the R&R, ECF No. 52, **ADOPTED** in its entirety. Accordingly, Defendants' motion to dismiss, ECF No. 18, is **DENIED in part** and **GRANTED in part**. Count V of the Amended Complaint alleging a RICO violation is **DISMISSED without prejudice**. In the event Cook wishes to amend Count V of the amended complaint, she must do so within fourteen (14) days. To the extent Defendants' earlier motion to dismiss, ECF No. 13, is not already **DENIED**, it is **DENIED as MOOT**.[2]

An appropriate **ORDER** will be entered.

Entered: 09/29/2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge

---

[2] See Young v. City of Mount Rainer, 238 F.3d 567, 573 (4th Cir. 2001).